# Collins, Appellant, v. Phillips.

*Judgment—Judgment by confession—Revival of judgment—Waiver of inquisition—Notice to heirs of defendant—Irregularity—Remedy—Act of 1705.*

1. Where a judgment is entered on a warrant of attorney containing a waiver of inquisition and one year thereafter the defendant dies, and subsequently an exemplification of the judgment containing no suggestion of the defendant's death is entered in another county, where the defendant owned land, but in which he did not reside and where no other creditor asserts a claim, and thereafter the judgment is revived by scire facias with constructive notice to the defendant's heirs, although without any substitution if his personal representatives, such proceedings, while irregular, are not void, and the defendant's heirs cannot thirty-two years after the defendant died and ten years after the land had been sold by the sheriff under the judgment, maintain an action of ejectment against the sheriff's vendees for the land in question.

2. In such a case the judgment bound the land and the heirs at law upon whom the title devolved, were the only parties in interest at the time of the revival to be affected with notice. Under these circumstances there was no purpose to serve by raising up personal representatives of the defendant with no duty to perform, and no creditors to protect, simply to be affected with notice in order to give validity to the judgment of revival. Such a case is covered by the act of 1705, 1 Sm. Laws 57, which provides that where lands have been sold by the sheriff upon an irregular judgment, the land shall not be restored to the person against whom the judgment was entered, but restitution only shall be made of the price for which such lands were sold.

3. Irregularity of selling land without an inquisition must be objected to within a reasonable time, and such reasonable time is before the confirmation of the sale and the acknowledgment of the deed.

Argued October 9, 1911. Appeal No. 147, Oct. T., 1911, by plaintiffs, from judgment of C. P. Greene Co., March T., 1910, No. 125, on verdict for defendants in case of Carrie H. Collins et al. v. William S. Phillips

et al.   Before FELL, C. J., BROWN, MESTREZAT, PORTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Ejectment for land in Cumberland township.   Before INGRAHAM, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendants.   Plaintiffs appealed.

*Errors assigned* were (1-36) various rulings on evidence and instructions, including binding instructions for defendants.

. *James J. Purman,* with him *James W. Collins,* for appellants.—The judgment was void.   In the case at bar no warning was given the legal representatives of Robert Henderson, deceased, and no warning was given to his heirs at law.   His property was seized by his alleged creditor, sold and bought in by him.   He and those claiming under him must abide the consequences of his unlawful act: Steele v. Lineberger, 59 Pa. 308; Hill v. Truby, 117 Pa. 320; Skeels v. Ferris, 1 Lack. Jur. 35; Suter v. Findley, 5 Pa. Superior Ct. 163; Sample v. Barr, 25 Pa. 457; Wood v. Colwell, 34 Pa. 92; Wallace v. Holmes, 40 Pa. 427; Diese v. Fackler, 58 Pa. 109; Handley v. Walsh, 49 Pitts. Leg. J. 285; Duquesne Nat. Bank v. Mills, 32 Pitts. Leg. J. 213; Smith v. Siegel, 1 Woodward's Dec. 203; Keenan v. Gibson, 9 Pa. 249; Riland v. Eckert, 23 Pa. 215; Taylor v. Gaughan, 4 Lack. Jur. 66; Hoke v. Wentz, 13 York Leg. Rec. 101.

Execution could not issue.—Beck v. Church, 113 Pa. 200; Smith v. Gosline, 2 Pa. C. C. R. 15.

Before a judgment can be taken by default the record must clearly and affirmatively show legal service of process: W.-B. Ger. Schuetzen Verein & Ben. Assn. v. Schubach, 6 Kulp 136; Bryn Mawr Trust Co. v. Wilkins, 10 Montg. County 101; Huckenstein v. Love, 98 Pa. 518;

Bryn Mawr Trust Co. v. Wilkins, 5 Del. County 494; Wright v. Cheyney, 1 Chest. County 237.

No one is precluded by a judgment who had not an opportunity to appear and take defense: Morrison v. Mullin, 34 Pa. 120; Rhoads v. Armstrong County, 41 Pa. 92; Mitchell v. Stewart, 13 S. & R. 295.

If inquisition is not waived or held, sale on fi. fa. is void: Baird v. Lent, 8 Watts 422; Wolf v. Payne, 35 Pa. 97; St. Bartholomew's Church v. Wood, 61 Pa. 96; Hope v. Everhart, 70 Pa. 231.

*John C. Bane,* with him *William J. Kyle,* of *Kyle & Reinhart,* for appellees.—The judgment was not void: Hays v. Shannon, 5 Watts 548; Duff v. Wynkoop, 74 Pa. 300; Shannon v. Newton, 132 Pa. 375; Lengert v. Chaninel, 208 Pa. 229; Colley v. Latimer, 5 S. & R. 211; Martin v. Rex, 6 S. & R. 296; Allison v. Rankin, 7 S. & R. 269; Warder v. Tainter, 4 Watts 270; Sloan v. McKinstry, 18 Pa. 120; Billings v. Russell, 23 Pa. 189; Ziegler v. Schall, 209 Pa. 526.

The plaintiffs took the land in controversy as heirs-at-law and not as terre tenants. They were mere volunteers and they took only what was left, if anything, after their ancestor's debts had been paid. And a judgment recovered against their ancestors in his lifetime remained a lien against them, their heirs and devisees, without revival: Horner v. Hasbruck, 41 Pa. 169; Brown's App., 91 Pa. 485; McCahan v. Elliott, 103 Pa. 634; Shannon v. Newton, 132 Pa. 375; Colenburg v. Ventler, 173 Pa. 113; Shearer v. Brinley, 76 Pa. 300; Baxter v. Allen, 77 Pa. 468; Fidelity Ins. Trust & Safe Dep. Co. v. Sampson, 209 Pa. 214.

OPINION BY MR. JUSTICE ELKIN, May 13, 1912:

The plaintiffs are the heirs-at-law of Robert Henderson, who at the time of his death in 1878, was a resident of the county of Allegheny. He died intestate, seised of the tract of land in controversy here. One year prior

to his death a judgment by confession upon warrant of attorney, waiving condemnation, inquisition and exemption, was entered of record in Allegheny county. About one year subsequent to his death an exemplification of this judgment was entered of record in Greene county, where the land involved in this action is located. In 1884, more than five years after the death of Robert Henderson, against whom the original judgment had been entered, a writ of scire facias was issued upon it against Robert Henderson, Caroline Henderson, Robert Watson and Mary Watson, his wife, formerly Mary Henderson, described as "heirs of Robert Henderson, deceased." To this writ the sheriff made return nihil. In 1885, an alias writ of scire facias issued against the same defendants, described in the same way, and to this writ there was another return of nihil. Two months later the court, on motion in writing, entered judgment on said two returns of nihil for $14,500. In 1890, before the expiration of the lien of the judgment revived in 1885, a writ of scire facias was again issued to revive the judgment and continue the lien. To this writ there was also return of nihil. On the same day a writ of fieri facias was issued on the judgment entered by the court in 1885, by virtue of which the land in dispute here was taken in execution and sold at public outcry to the plaintiff in the judgment, who became the purchaser. The sale was completed by the acknowledgment and delivery of a sheriff's deed in the manner provided by law. The deed was duly recorded so that all parties interested in the land had record notice of the title in Bell, the purchaser, since 1890. In 1900 Bell, for a consideration of $13,500, sold and conveyed the property to the present defendants, who have held title and possession of the same from that time to the present. This action of ejectment was brought in 1910 by the heirs-at-law of Robert Henderson, who died in 1878. In other words, the heirs now claiming made no effort to protect their interest in the land, or to question the proceedings under

which it was sold, or to assert title to it, for a period of thirty-two years after the death of their ancestor, under whom they claim title. The defendants are bona fide purchasers for a large consideration, and if this judgment be reversed, their property will be swept away from them without recourse so far as the record discloses. It is contended for appellants that the sale by the sheriff to Bell in 1890 conveyed no title, it being absolutely void, and if he took no title under that sale, he had nothing to convey. This position can only be sustained, if at all, upon the theory that the sale was absolutely void. This is the controlling question raised by the assignments of error and the principal one to be considered here. While there was an offer to prove that letters of administration upon the estate of Robert Henderson had been granted in Allegheny county in 1878, the exemplification of the judgment entered in Greene county contained no suggestion of his death, nor was there any substitution of his personal representatives in any of the subsequent proceedings to revive the judgment so entered. At no time was there a garnishment of personal representatives in Greene county, and if this fact renders the judgment subsequently entered upon the writs of scire facias, and the sale made pursuant thereto, absolutely void, there would be convincing force in the argument of the learned counsel for appellants. In this connection it should not be overlooked that Robert Henderson was not a resident of Greene county at the time of his death, nor perhaps at any other time, and had no personal representatives in that county. Prior to his death he had taken the benefit of the bankruptcy law and made a settlement with his creditors, so that whatever estate he had accumulated after the proceedings in bankruptcy, was administered in Allegheny county. Whether there were any general creditors claiming against his estate is not disclosed, but it does appear that the only creditor who asserted any rights in Greene county was the plaintiff in the judg-

ment upon which the land in dispute was sold. Henderson had no other property in Greene county, and the judgment entered upon the exemplification there was to all intents and purposes a judgment in rem, against the land in controversy here. When that judgment was revived in 1885, his estate having been administered, and all other liens, if any there were, having expired, the only persons in interest to be served with notice, or who could question the validity of the proceedings, were the heirs named in the writs of scire facias. The land had descended to these heirs impressed with the lien of a judgment against their father, and they at any time after five years from his death, could have sold the property discharged of liens. This they did not do, but still held the title when the writs of scire facias issued. They took this title cum onere, and the proceedings against them were in effect de terris. The judgment bound the land, and the heirs-at-law, upon whom the title devolved, were the only parties in interest at the time of the revival to be affected with notice. Under these circumstances there was no purpose to serve by raising up personal representatives of Robert Henderson, deceased, with no duty to perform, and no creditors to protect, simply to be affected with notice in order to give validity to the judgment of revival. The law looks to the substance and not to the form, and the substance of the thing to be done in this particular case was to give notice to the real and only parties in interest at the time the judgment was revived. That the proceedings were irregular, must be conceded; but that the judgment was absolutely void, we cannot agree. It is strongly urged that this view is in conflict with Cadmus v. Jackson, 52 Pa. 295, upon which appellants rely. That case represents the most extreme view expressed by this court upon the question involved, but its authority has never been recognized or extended beyond the peculiar facts of the case upon which it is based. Indeed, in Taylor v. Young, 71 Pa. 81, after a re-argument

before the full bench, Chief Justice THOMPSON, in writing the opinion of this court, said: "Let the last cited case (Cadmus v. Jackson) stand for the class to which it belongs, but let it not become an aggressive principle where it is alien." It thus appears that within a few years after Cadmus v. Jackson was decided its authority as a rule of general application was questioned and limited by this court. In Cadmus v. Jackson, the judgment was entered against Young on November 26, 1859. He died within a month after the entry of the judgment, and about two months later the levari facias was issued upon which the property was sold. The proceeding was against his estate and his personal representatives were not warned. When the levari facias issued in that case the personal representatives were the only proper persons to act for and protect the estate of Young, as well as his creditors, and there was every reason why they should be made parties to the proceeding. In the case at bar no such reason existed because the estate of Henderson had long since been administered; all liens except the one upon which the property was sold had expired; and the heirs alone, upon whom the title devolved, were the only parties who had an interest in the land bound by the judgment at the time of the revival. As to these heirs, the judgment against their father continued indefinitely: Konigmaker v. Brown, 14 Pa. 269; Bindley's Appeal, 69 Pa. 295; Shannon v. Newton, 132 Pa. 375; Colenburg v. Venter, 173 Pa. 113; Ziegler v. Schall, 209 Pa. 526. An heir is a volunteer, not a terre tenant, and only takes what is left of the ancestor's estate after the debts are paid: Horner v. Hasbrouck, 41 Pa. 169. Again, in Cadmus v. Jackson, the controversy was between adverse holders of title in which the heirs of the decedent were not concerned. Many other questions were involved in that case and this no doubt led the court to say in the later case of Taylor v. Young that it could stand as an authority for the particular facts upon which it was decided, but that it should not

be extended so as to make it a rule of general application. A study of our later cases will show that the rule has not been extended, but, on the other hand, the disposition of the courts has been to treat such judgments as irregular and voidable rather than absolutely void. In Hays v. Shannon, 5 Watts 548, it was held that the revival of a judgment which was entered against the land of a decedent, by a scire facias against his heirs, is irregular and erroneous, but not void. Chief Justice GIBSON delivered the opinion in that case and held that if an execution was issued upon the judgment so obtained, and the land was sold by the sheriff, a good title passed to the purchaser, which could not be defeated in ejectment by the heirs at law. While that case was decided in 1836, two years after the Act of Feb. 24, 1834, P. L. 70, became a law, the effect of that act was not considered because the judgment had been irregularly revived ten or twelve years before the act went into effect. It does show, however, how this court regarded irregular revivals of judgments under the early practice, even after the Act of 1834 was passed. The authority of that case has been frequently cited with approval in later cases: Overton v. Tozer, 7 Watts 331; Duff v. Wynkoop, 74 Pa. 300.

Then, again, in passing upon the merits of the present controversy, the Act of 1705, 1 Sm. Laws 57, must not be overlooked. This act provides, in substance, that if the sheriff sell lands under an execution upon a judgment irregularly obtained, and which may be subsequently reversed for errors, such lands shall not be restored to the person against whom the judgment may have been wrongfully entered, but restitution only shall be made of the price for which such lands were sold. This is a wholesome statute, intended to quiet titles, and has always been favored by our courts, both before and after the passage of the Act of 1834: Warder v. Tainter, 4 Watts 270; Feger v. Kroh, 6 Watts 294; Mellon v. Guthrie, 51 Pa. 116; Duff v. Wynkoop, supra; Shannon v.

Newton, 132 Pa. 375; Lengert v. Chaninel, 208 Pa. 229. Our cases conclusively show that the Act of 1705 has been broadly and liberally construed in order to prevent the disturbance of titles because of errors and irregularities in entering judgments and making sales by sheriffs upon executions. The case at bar comes clearly within the spirit and purpose of this act.

It is also objected that the land was improperly sold on a writ of fieri facias because there was no waiver of inquisition. This objection ignores the facts which appear of record. The execution docket of Greene county shows that inquisition was waived. The warrant of attorney upon which the original judgment was entered in Allegheny county contains an express waiver of inquisition, and the exemplification transmitted to Greene county also contains a similar waiver. The sheriff's deed contains a recital that the land was seized and sold by virtue of a writ of fieri facias upon which inquisition was waived. In view of these facts it cannot be said that the land was sold upon a process in which inquisition was not waived. But at most this is only an irregularity which under the authority of our cases must be objected to within a reasonable time, and it has been frequently held that such reasonable time is before the confirmation of the sale and the acknowledgment of the deed: Spragg v. Shriver, 25 Pa. 282; McLaughlin v. McLaughlin, 85 Pa. 317; Clough v. Welsh, 229 Pa. 386.

All of the other matters complained of on this appeal are irregularities, or errors, not subject to collateral attack in an action of ejectment.

Assignments of error overruled and judgment affirmed.