## Skolnek's Estate.

Argued January 20, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Robert C. Haberstroh,* for appellant.

*Martin Goodman,* for appellee.

OPINION BY MR. JUSTICE LINN, March 24, 1941:

Louis Skolnek died January 29, 1936. By his will, probated February 6, 1936, he provided that after the payment of specific legacies totaling $600.00, the residue should go to his wife on terms quoted in the margin;[1] he did not direct the payment of debts. His executor filed a first and partial account June 16, 1937, showing payment of certain debts, taxes, administration expenses, distribution to some legatees, and a balance for future accounting; it was confirmed July 25, 1938. He filed a second and partial account[2] at the audit of which the Peoples-Pittsburgh Trust Company, appellant, presented a claim for $7,131.68, as the balance due on a bond and mortgage. We understand this to be the only unpaid debt and that the present dispute is between appellant and the widow, residuary beneficiary. This second account showed a personalty balance for distribution amounting to $7,943.30, apparently reduced at the audit to $7,717.55. It may be said at this point that the learned court below thought that sum could not be realized in cash.

The claim is on a bond and mortgage executed by Louis Skolnek and Oscar Stein, in June, 1927, secured

---

[1] "FOURTH All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever the same may be situate, which consists principally of real estate, . . . I give, devise and bequeath unto my beloved wife, MARY SKOLNEK, for and during the period of her natural life, she to have and take the rents, issues and profits thereof with the full right and power to sell and consume the corpus thereof in whole or in part from time to time as and if she may need the same for her proper support and maintenance, and upon the death of my said wife, I give, devise and bequeath my said property and estate or such thereof as shall remain in the event that my said wife has consumed any part thereof for her necessary maintenance and support, to my beloved children and to the issue of my deceased child," naming them. Compare *Powell's Estate*, 340 Pa. 404.

[2] The account was referred to an auditor August 4, 1938, and came on for audit August 30, 1938.

on real estate in Blair County. In October, 1927, Stein conveyed his interest to Skolnek subject to the mortgage. In 1928 Skolnek and wife conveyed the property to Vito Rispoli who, the auditor found, "expressly assumed payment" of the mortgage debt, though the words of the assumption do not appear in the printed record.[3] Rispoli defaulted and by sci. fa. sur mortgage, judgment was entered during Skolnek's lifetime, for the amount of the debt, which has been reduced to $7,131.68. Since December, 1933, appellant has been collecting the rents and income from the premises. No foreclosure sale has been had.

The auditor and the learned court below rejected the claim, holding, as we understand, that it must be reduced in amount by "the fair market value of the real estate" mortgaged, or to the deficiency, if any, after foreclosure sale. The auditor said: "It is admitted by the parties in interest that the Estate of Louis Skolnek is solvent[4] if we consider all of the Real Estate, of which the decedent died seized, as assets of his estate, and it is also admitted that the Estate of Louis Skolnek is insolvent if the Real Estate, of which the deceased died seized, is *not now* considered as assets. This unusual situation has been brought about by the failure of the Peoples-Pittsburgh Trust Company, creditor, to file any claim within one (1) year after the date of death of its debtor, to bind the Real Estate of which he died seized." The learned judge agreed with the auditor, saying: "The Trust Company by its laches has placed the estate in a prejudicial position because had the claim been presented promptly it would have been paid out of marketable assets, whereas by delaying the matter

---

[3] The facts as stated by the auditor and by the court are inconsistent in a number of details; these minor variations, however, are immaterial to the questions for consideration on this appeal.

[4] Decedent's personal property was originally inventoried at $11,537.72 and the real estate was appraised for inheritance tax purposes at $22,655.00.

it would force the Executor to sacrifice the Building and Loan Stock, sell the Penn Central Light & Power Company Stock, which the Executor received authority from this Court to hold by decree made September 21, 1936, and the claim then would not be satisfied. We would have a condition here where the Trust Company would own part of the mortgage and the estate the balance. This is all brought about by the neglect of the Trust Company and we are of the opinion that the Auditor was correct in his findings in holding that it must proceed against the collateral. That is, on the mortgage by foreclosure proceedings, and thereafter fix the amount of the deficiency in accordance with the fair market value of the real estate, or present satisfactory testimony as to the fair market value of the real estate."

The rejection of the claim cannot be sustained. The judgment on the sci. fa. sur mortgage, a proceeding in rem, bound only the mortgaged land and not other real estate owned by the mortgagor at the time of his death: *Wilson v. McCullough,* 19 Pa. 77; *Evans v. Wilmer,* 210 Pa. 624, 60 A. 312. The debt represented by the bond secured by the mortgage remained a lien on decedent's real estate for only a year after his death because judgment had not been entered on the warrant and no suit to continue the lien was brought under section 15(a) of the Fiduciaries Act, 1917, P. L. 447, 20 PS § 521; that provision and section 15(h), 20 PS § 528, apply to the bond. By not continuing the lien provided by the statute, appellant deprived itself of the right to proceed against decedent's other real estate: *Finley's Estate,* 309 Pa. 200, 202, 163 A. 753; *Central Penn Nat. Bank v. Culp,* 320 Pa. 358, 361, 182 A. 239; but failure to continue the lien is not a bar to presenting the claim for payment out of the personal property which is the subject of the account under audit.

The widow has taken the real estate which, when the claim was presented, was not subject to the statutory lien for appellant's debt; nor did the phraseology of

the will impose liability on the land (compare *Blake's Estate*, 134 Pa. 240, 19 A. 850) which need therefore not contribute to the payment of the debt.

The fact is that the second and partial account now for audit shows a balance of personal property for distribution. It is the primary fund for the payment of debts and the claim is presented in time. The learned court held that since the real estate is no longer subject to the debt and the present value of the personalty is insufficient to pay the claim in full, the estate should be considered insolvent and the claimant must therefore surrender the value of its mortgage under the *United Security Trust Co. Case*, 321 Pa. 276, 184 A. 106. If the unconverted personal property in the hands of the accountant will not realize sufficient cash to discharge the debt, the claimant is nevertheless entitled to have applied in discharge of it such balance as there is. Although the creditor omitted to present his claim at the audit of the first account and, by not continuing its lien, lost the opportunity to claim on decedent's real estate, those facts do not bar the right to have the presently distributable personalty applied to the claim whether sufficient to pay all or only part. The rule of the *United Security Trust Company Case* was designed to secure equality of distribution among competing creditors. This is a contest, not between two creditors, but between a single creditor and the legatees. The widow is not a creditor but a volunteer (compare *Shannon v. Newton*, 132 Pa. 375, 382, 19 A. 138) and cannot require a reduction of the claim by the value of the mortgaged real estate conveyed to Rispoli. If the executor pays the claim, decedent's estate will be subrogated to appellant's right against the mortgaged land and, on the assumption referred to by the auditor, against Rispoli: compare *Northern Trust Co. v. Phila. Wholesale Drug Co.*, 333 Pa. 386, 5 A. 2d 193; *Ruzyc v. Brown*, 320 Pa. 213, 217, 181 A. 783.

As was said at the argument, this seems to be a case where the real dispute is to determine who should complete the foreclosure begun by the sci. fa. sur mortgage.

Decree reversed, record remitted for further proceedings; costs to be paid out of the fund for distribution.